McCULLOCH KLEINMAN LAW
Kevin P. McCulloch
kevin@mkiplaw.com
Nate A. Kleinman
nate@mkiplaw.com
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN KEE,<br><br>    *Plaintiff*,<br><br>    v.<br><br>BARRY SANDERS and BARRY SANDERS, INC.,<br><br>    *Defendants.* | Civil Case No.<br><br><br><br>**COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL** |

Plaintiff Allen Kee ("PLAINTIFF"), by and through undersigned counsel, hereby demands a trial by jury of all claims and issues so triable, and, as for his Complaint for copyright infringement and related claims against Defendants BARRY SANDERS ("SANDERS") and BARRY SANDERS, INC. ("BSI") (together "DEFENDANTS") hereby asserts and alleges as follows:

## PARTIES

1.      PLAINTIFF is a renowned professional sports photographer who earns a living, in part, by selling and licensing his original photographs and earning royalties from customers who purchase licenses to publish and otherwise use his photographic works.

2.      PLAINTIFF currently is a resident of both Florida and Connecticut.

3.      BARRY SANDERS is a former professional football player who played ten seasons for the Detroit Lions football team ("Detroit Lions"), which is owned and operated by the corporate entity Detroit Lions, Inc. ("DLI").

4.      DLI is one of thirty-two organizations or "clubs" that are members of and comprise the National Football League ("NFL").

5.      Upon information and belief, SANDERS currently resides in Detroit, Michigan.

6.      Upon information and belief, BSI is a for-profit corporation which owns and manages the trademarks of SANDERS, including the "20" a.k.a. "Running Man" logo (hereafter the "SANDERS LOGO") that was registered with the U.S. Patent and Trademark Office (U.S.P.T.O.) under Registration No. 2954299.

7.      Upon information and belief, BSI was initially formed in Florida in 2003, then later dissolved and re-registered in Michigan in 2023, with a registered agent located at 336 W. First Street, Suite 113, Flint, Michigan, 48502.

8.      Upon information and belief, BSI is wholly owned and operated by SANDERS.

## BACKGROUND AND RELATED ACTION

9.      This is an action for copyright infringement and related claims brought by PLAINTIFF, the registered owner of the exclusive copyrights in and to the photographic work at issue, against DEFENDANTS for unauthorized and infringing use of PLAINTIFF'S copyrighted

2

work and other related violations of PLAINTIFF'S rights and intellectual property as alleged herein.

10.     On or about September 3, 1995, during a professional football game involving the Detroit Lions, PLAINTIFF created an iconic photograph of SANDERS (the "PHOTOGRAPH"), who at the time was a member of the Detroit Lions and under contract with DLI.

11.     A true and correct copy of PLAINTIFF'S PHOTOGRAPH is below and also attached hereto as <u>EXHIBIT 1</u>.



12.     PLAINTIFF has registered his copyrights in and to the PHOTOGRAPH with the United States Copyright Office under VA 2-373-133.

13.     Upon information and belief, DEFENDANTS regularly transact business and enter into contracts that are governed under New York law, including with the NFL and DLI, which has granted an exclusive license to NFL Properties, LLC ("NFLP"), an entity headquartered at 345 Park Avenue, 5th Floor, New York, New York, to manage and sub-license its trademarks and other intellectual property collectively with the other NFL member clubs.

14.     Upon information and belief, contracts entered into by DEFENDANT SANDERS related to his playing football for the Detroit Lions were subject to a collectively bargained contract between the NFL, on behalf of its member clubs, and the NFL Players Association ("NFLPA").

15.     Upon information and belief, DEFENDANT SANDERS' collectively bargained contract granted the Detroit Lions and/or NFL the right to sell licenses to third parties to create and sell apparel, memorabilia, and other commercial products that feature SANDERS' name, image, and likeness subject to him being paid certain fees or royalties, which were to be paid by NFLP from New York.

16.     Upon information and belief, to the extent that any entity wishes to sell apparel, merchandise, memorabilia, or other commercial products featuring photographs of SANDERS that were created during and NFL-sponsored game or event that entity must obtain a license or permission to use both SANDERS' name, image, and likeness and the trademarks and, if they are featured in the photograph, the logos of the Detroit Lions from NFLP (or another entity which has entered into a sub-licensing agreement or arrangement with NFLP).

17.     Upon information and belief, all of the apparel, merchandise, memorabilia, and other products that feature the PHOTOGRAPH at issue in this action were subject to this requirement because those products included SANDERS' name, image, or likeness and the logos and intellectual property of DLI.

18.     Upon information and belief, DEFENDANTS have partnered with other New York-based companies, including The New Era Cap Company, NFL Films, and Fanatics for purposes of selling apparel, merchandise, memorabilia, and other products across the country and in this District.

19.    Upon information and belief, SANDERS regularly travels to this District for purposes of conducting business with the NFL and his other New York corporate partners.

20.    According to their legal counsel, DEFENDANTS claim to have licensed PLAINTIFF'S iconic PHOTOGRAPH for the sole, limited purpose of using it on the cover of his autobiography *Barry Sanders Now You See Him: His Story in His Own Words*, which was published in 2003.

21.    In 2003, the only entity that was authorized to grant a license to the PHOTOGRAPH was NFL Photos, which was formerly a photography licensing agency that was owned and operated by the NFL or one of its various subsidiaries or affiliate entities.

22.    Like the NFL, NFL Photos was headquartered and registered to do business in the State of New York and this District specifically.

23.    All licenses issued by NFL Photos were contracts formed in and issued from New York and expressly stipulated that any claims related to the unauthorized use of the licensed photographic content, including any use beyond the limitations and restrictions of the license, were subject to the laws of the State of New York and such claims must be brought in New York.

24.    DEFENDANTS did not obtain (and do not claim to have obtained) any other license or permission to use PLAINTIFF'S PHOTOGRAPH.

25.    DEFENDANTS do not claim to have obtained a high-resolution digital file of PLAINTIFF'S PHOTOGRAPH from any source other than NFL Photos.

26.    Therefore, if DEFENDANTS obtained PLAINTIFF'S PHOTOGRAPH from NFL Photos under a limited-use license as they claim through legal counsel, that license was subject to the laws of the State of New York and stipulated that any claims related to the unauthorized use of the PHOTOGRAPH, including claims alleged herein, must be brought in New York.

27.     As alleged in more detail herein, if DEFENDANTS obtained PLAINTIFF'S PHOTOGRAPH from NFL Photos in or about 2003 under a limited-use license as they claim through legal counsel, they wrongfully retained the high-resolution digital copy of the PHOTOGRAPH for the last 20+ years and did so for the express and intentional purpose of illegally copying, publishing, distributing, making derivative works from, and otherwise using the PHOTOGRAPH to their substantial and ongoing benefit and profit.

28.     Any and all of DEFENDANTS' uses of PLAINTIFF'S PHOTOGRAPH beyond the limited use for the 2003 autobiography, including all of the uses alleged herein, were unauthorized, unlicensed, and infringed PLAINTIFF'S copyrights.

29.     In addition to the claims alleged herein, PLAINTIFF also has an ongoing lawsuit in this Court against DLI, together with DLI's co-defendants Fanatics Retail Group North, LLC ("Fanatics"), Dick's Sporting Goods ("DSG"), Bullion International d/b/a The Highland Mint ("Highland Mint"), Timeless Creations, Inc. ("TCI"), and Kevin Gordon d/b/a VC Collectibles (referred to collectively hereinafter as the "CO-DEFENDANTS") for the unauthorized and infringing use of his PHOTOGRAPH in a related action captioned as *Kee v. The Detroit Lions, Inc., et al.*, Case No. 1:24-cv-00223-ALC (S.D.N.Y.) (the "LIONS ACTION").

30.     As detailed in PLAINTIFF'S First Amended Complaint in the LIONS ACTION, PLAINTIFF never authorized, permitted, or granted a license to any of the CO-DEFENDANTS to copy, publish, license, distribute, create derivatives of, or otherwise use his PHOTOGRAPH.

31.     At least certain of the CO-DEFENDANTS in the LIONS ACTION, including without limitation Highland Mint, obtained the high-resolution copy of PLAINTIFF'S PHOTOGRAPH that they used to create the infringing products identified in that case from the DEFENDANTS and/or the agent for DEFENDANTS, J.B. Bernstein.

32.    Additionally, as alleged herein, DEFENDANTS facilitated, encouraged, participated in, could have stopped, and directly financially benefited from all of the unauthorized and infringing uses of PLAINTIFF'S PHOTOGRAPH by the CO-DEFENDANTS in the LIONS ACTION.

## JURISDICTION AND VENUE

33.    Jurisdiction for PLAINITFF'S copyright claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

34.    This Court has supplemental jurisdiction over PLAINTIFF'S related state law claims lies pursuant to 28 U.S.C. § 1367(a) (granting federal courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution") because the state law claims alleged herein arise from the same set of facts giving rise to PLAINTIFF'S copyright claims, they are inextricably related to and intertwined with the copyright claims, and they will involve the same witnesses and discovery as the copyright claims and thus it would promote judicial efficiency for all of PLAINTIFF'S claims against DEFENDANTS to proceed in one action and be heard at one trial.

35.    DEFENDANTS are subject to personal jurisdiction in the State of New York and venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (b) because, upon information and belief, DEFENDANTS conduct substantial and consistent business within this District, including earning substantial and ongoing revenue from the NFL and other entities that are located or doing business in this District.

36.     DEFENDANTS also are subject to specific personal jurisdiction in the State of New York and venue is proper in this Court because DEFENDANTS claim to have originally obtained a copy of the PHOTOGRAPH from the NFL, which is headquartered in this District.

37.     DEFENDANTS also are subject to specific personal jurisdiction in the State of New York and venue is proper in this Court because the limited license pursuant to which the DEFENDANTS claim to have obtained a copy of the PHOTOGRAPH would have expressly provided that any claims related to any violations of that license and/or further unauthorized use(s) of the PHOTOGRAPH were subject to the laws of New York and must be brought in New York.

38.     DEFENDANTS also are subject to specific personal jurisdiction in the State of New York and venue is proper in this Court because, upon information and belief and as alleged herein, DEFENDANTS encouraged, facilitated, participated in, could have stopped, directly profited from, and are jointly liable for the infringement of PLAINTIFF'S copyrights by the CO-DEFENDANTS in the LIONS ACTION, including the infringing conduct that occurred in this District and the actions by those CO-DEFENDANTS that are located in, reside in, and/or conduct substantial business in this District.

39.     Venue also is proper in this District and Court because PLAINTIFF'S copyrights have been violated in this District as alleged herein by DEFENDANTS and the CO-DEFENDANTS in the LIONS ACTION, with the full knowledge, encouragement, and participation of DEFENDANTS.

40.     Venue also is proper in this District and Court because PLAINTIFF'S claims in this action are directly related to and inextricably intertwined with the claims against the CO-DEFENDANTS in the LIONS ACTION and there is a substantial overlap between the factual allegations and the parties in both actions, and the discovery in both actions primarily involves

persons, entities, and documents located in this District and, therefore, it would promote judicial efficiency for all of PLAINTIFF'S claims against DEFENDANTS to proceed in the same court and in an action related to the LIONS ACTION in this District.

41.    Upon information and belief, DEFENDANTS have sold and distributed infringing products at issue in this action to residents of New York and in this District.

## FACTUAL ALLEGATIONS

### *Plaintiff's Photograph*

42.    PLAINTIFF has been a professional sports photographer for over three decades.

43.    At the time that PLAINTIFF created the PHOTOGRAPH in 1995, he worked as a freelance photographer rather than an employee of any business or licensing agency and did not create the PHOTOGRAPH under any "work for hire" arrangement or contract.

44.    PLAINTIFF exclusively owns all copyrights in and to the PHOTOGRAPH.

45.    Shortly after he created the PHOTOGRAPH, PLAINTIFF submitted it to NFL Photos for purposes of sublicensing it to customers/media outlets.

46.    PLAINTIFF is the sole author of the PHOTOGRAPH and is the exclusive owner of all copyrights in and to the PHOTOGRAPH and has never granted an exclusive license regarding the PHOTOGRAPH to any person or entity.

### *Defendants' Unauthorized and Infringing Uses of The Photograph*

47.    Again, DEFENDANTS claim to have originally obtained a copy of PLAINTIFF'S iconic PHOTOGRAPH over 20 years ago for the sole, limited purpose of using it on the cover of the 2003 *Barry Sanders* autobiography.

48.    Even if DEFENDANTS' use of the PHOTOGRAPH on the cover of this 2003 autobiography was licensed – which PLAINTIFF does not concede it was – SANDERS and BSI improperly retained and continued to illegally reuse the PHOTOGRAPH thereafter.

49.    Since 2003, DEFENDANTS repeatedly and illegally have copied, published, distributed, made derivative works from, and otherwise used PLAINTIFF'S copyrighted work to their substantial and ongoing benefit and profit.

50.    Since 2003, DEFENDANTS have made substantial and ongoing uses of PLAINTIFF'S PHOTOGRAPH in various ways – including to create apparel, memorabilia and other products, and to promote DEFENDANTS' name-brand and business ventures – all of which are illegal, unauthorized, unlicensed, and infringe PLAINTIFF'S copyrights and other rights.

51.    Upon information and belief, DEFENDANTS specifically chose this PHOTOGRAPH for the cover of the 2003 autobiography because it is the most iconic photograph of SANDERS participating in a football game; and that is the same reason that DEFENDANTS chose to illegally copy and reuse the PHOTOGRAPH for their own benefit and why they encouraged and facilitated the CO-DEFENDANTS' infringing use of the PHOTOGRAPH as alleged in the LIONS ACTION.

### *The Sanders' Logos*

52.    Among other things, DEFENDANTS purposefully copied PLAINTIFF'S PHOTOGRAPH to create two (2) derivative brand logos and trademarks that SANDERS used for self-promotion and commercial purposes, including but not limited to using these unauthorized

derivatives of PLAINTIFF'S PHOTOGRAPH to create, market, and sell apparel, merchandise, memorabilia, and other products.

53.    In 2005, BSI was granted a trademark registration by the U.S.P.T.O. for the SANDERS LOGO, which features a detailed, blue silhouette of SANDERS, copied directly from PLAINTIFF'S PHOTOGRAPH, centered in front of the number 20, which was SANDERS' jersey number as a player for the Detroit Lions.

54.    DEFENDANTS also created a second version of the SANDERS LOGO, which incorporates the same silhouette of SANDERS that is copied directly from PLAINTIFF'S PHOTOGRAPH, but this time centered in front of the number 21, which was SANDERS' jersey number during college at Oklahoma State University and colored orange.

55.    A copy of the SANDERS LOGOS, as displayed on DEFENDANTS' current website (www.barrysanders.com) is attached hereto as EXHIBIT 2.

56.    For ease of reference, a side-by-side comparison of the PHOTOGRAPH and the SANDERS LOGOS is below.



57.    In creating these derivative logos, DEFENDANTS purposefully and specifically recreated details of PLAINTIFF'S PHOTOGRAPH, copying all protectable elements of PLAINTIFF'S original PHOTOGRAPH, all of which are owned exclusively by PLAINTIFF.

58.    Upon information and belief, both versions of the SANDERS LOGO were intended to be direct reproductions of the PHOTOGRAPH and to be easily recognizable by the public and business partners of DEFENDANTS as derivative copies of the PHOTOGRAPH.

59.    Upon information and belief, DEFENDANTS specifically chose PLAINTIFF'S PHOTORGAPH to copy for use as their brand logos and trademarks because it is the most iconic and well-known photograph of SANDERS participating in a football game and thus was the most useful photographic image with which to create brand recognition for products, apparel, and memorabilia that would be associated with, endorsed by, and/or owned/sold by SANDERS personally.

60.    DEFENDANTS never sought or obtained permission from PLAINTIFF to copy and use his PHOTOGRAPH to create the SANDERS LOGOS.

### The Sanders Statue and Related Products

61.    On or about September 16, 2023, the Lions unveiled an 8-foot-tall bronze statue of SANDERS (the "SANDERS STATUE") located outside of the team's stadium in Detroit, Michigan.

62.    As detailed in the LIONS ACTION, the SANDERS STATUE was created by TCI and directly and intentionally copied and reproduced PLAINTIFF'S PHOTOGRAPH in an alternative medium.

63.    DLI and/or TCI illegally created and printed a large-format copy of PLAINTIFF'S PHOTOGRAPH to hang in TCI's sculpting studio in order for TCI to precisely, intentionally, and slavishly reproduce PLAINTIFF'S PHOTOGRAPH as a bronze statue.

64.    Upon information and belief, DEFENDANTS were directly involved in and contributed to the creation of the SANDERS STATUE, including by choosing the

PHOTOGRAPH to be used and/or providing an unauthorized copy of the PHOTOGRAPH to DLI and TCI to illegally reproduce as a statue.

65.    Upon information and belief, either directly and/or through their agent, DEFENDANTS encouraged and facilitated the use of the PHOTOGRAPH as the basis for the SANDERS STATUE.

66.    Upon information and belief, DEFENDANTS directly benefitted and profited from the use of the PHOTOGRAPH as the basis for the SANDERS STATUE, including because the unveiling ceremony was used as an opportunity for DEFENDANTS to advertise and promote their brand and apparel, with the SANDERS LOGO prominently displayed on the speaker's podium and wall/back-drop, and on t-shirts created and marketed specifically for/at the ceremony:







67.    Shortly before the unveiling of the SANDERS STATUE, an "officially licensed" commemorative plaque was created and produced by Highland Mint – the company responsible for manufacturing the coins used for the opening "coin toss" in all NFL games – to celebrate and

monetize the SANDERS STATUE and to generate profit for DEFENDANTS.  The product was titled the "Statue Unveiling Silver Coin Photo Mint" (hereafter, the "PHOTO MINT PRODUCT").

68.    Upon information and belief, DEFENDANTS and/or their agents distributed a high-resolution copy of PLAINTIFF'S PHOTOGRAPH and an unauthorized derivative thereof created by TCI to Highland Mint for purposes of creating the PHOTO MINT PRODUCT.

69.    Upon information and belief, when DEFENDANTS and/or their agent distributed a copy of PLAINTIFF'S PHOTOGRAPH to Highland Mint, the SANDERS LOGO was stamped directly on the PHOTOGRAPH as shown below:



70.    Upon information and belief, DEFENDANTS intentionally added the SANDERS LOGO to the PHOTOGRAPH in order to falsely suggest and deceptively represent to the public generally and the CO-DEFENDANTS, including specifically Highland Mint, that DEFENDANTS owned rights to the PHOTOGRAPH.

71.    Upon information and belief, Highland Mint and/or other CO-DEFENDANTS relied on DEFENDANTS' representations and thus will and presently do contend in the LIONS ACTION that they were falsely led by DEFENDANTS to believe that SANDERS owned rights to the PHOTOGRAPH.

72.    The PHOTO MINT PRODUCT features two unauthorized copies of PLAINTIFF'S PHOTOGRAPH—one that is unaltered, and a second that has been edited/colorized and placed atop a digital plinth, to appear as if it is the statue itself.

73.    DEFENDANTS, directly and/or through their agent, J.B. Bernstein, also sent a copy of the digitally altered, unauthorized derivative version of the PHOTOGRAPH created by TCI (shown below) to Highland Mint for use in the PHOTO MINT PRODUCT:



74.    A true and correct copy of the PHOTO MINT PRODUCT which includes both copies of the PHOTOGRAPH is attached hereto as <u>EXHIBIT 3</u>.

75.    Upon information and belief, the PHOTO MINT PRODUCT has been sold and distributed by such retailers as Dick's Sporting Goods and Fanatics, and the NFL Shop website.

76.    Upon information and belief, DEFENDANTS, either directly or through/in concert with NFLP, also contracted with the McFarlane Toys company to create a 7" toy figurine (the "TOY PRODUCT") depicting SANDERS, in three different color styles (white jersey, blue jersey, and gold/bronze), in the same form/pose as the SANDERS STATUE.

77.    Upon information and belief, the SANDERS LOGO, SANDERS STATUE, and TOY PRODUCT are each intended to be slavish recreations of PLAINTIFF'S PHOTOGRAPH.

78.    PLAINTIFF never granted DEFENDANTS permission, authorization, or a license to use the PHOTOGRAPH for any of the uses identified and alleged herein.

79.    Because information regarding DEFENDANTS' copying and uses of PLAINTIFF'S PHOTOGRAPH remains in DEFENDANTS' possession, the full and complete scope of DEFENDANTS' infringing uses of PLAINTIFF'S PHOTOGRAPH has not yet been fully ascertained.

80.    Upon information and belief, DEFENDANTS obtained a direct financial benefit from the unauthorized and infringing uses of PLAINTIFF'S PHOTOGRAPH, including by earning royalties from sales of the infringing products and by using the unveiling ceremony and broader publicity related to the SANDERS STATUE to market and sell products, memorabilia, and apparel that features the illegal derivative SANDERS LOGO.

81.    DEFENDANTS, by their willful, knowing, and/or reckless actions, injured PLAINTIFF by engaging in the unlicensed, unauthorized, and uncompensated use of PLAINTIFF'S creative work and, as such, deprived PLAINTIFF of his control over, and rightful compensation for the use of his creative work.

82.     Upon information and belief, DEFENDANTS have used actual copies of PLAINTIFF'S PHOTOGRAPH to sell as signed memorabilia products, including through the Professional Sports Authenticator (PSA) company.

83.     DEFENDANTS also have published and displayed PLAINTIFF'S PHOTOGRAPH on SANDERS' own website and his official social media accounts, including Facebook and Instagram.

84.     PLAINTIFF never granted DEFENDANTS permission, authorization, or a license to use the PHOTOGRAPH for any of the uses identified and alleged herein.

## COUNT I
## DIRECT, CONTRIBUTORY and/or VICARIOUS
## COPYRIGHT INFRINGEMENT
## UNDER 17 U.S.C. § 501

85.     PLAINTIFF repeats and re-alleges each allegation set forth in the paragraphs above as if set forth fully herein.

86.     PLAINTIFF created and owns all copyrights in and to the PHOTOGRAPH at issue in this action, a copy of which is set forth in Exhibit 1.

87.     PLAINTIFF has registered his copyrights in and to the PHOTOGRAPH with the United States Copyright Office under Registration No. VA 2-373-133.

88.     DEFENDANTS infringed PLAINTIFF'S copyrights by making unauthorized copies and derivative uses of PLAINTIFF'S PHOTOGRAPH as described herein.

89.     By making unauthorized copies and derivative uses of PLAINTIFF'S copyrighted work, DEFENDANTS infringed PLAINTIFF'S exclusive rights and otherwise misappropriated PLAINTIFF'S intellectual property for their own profit, causing PLAINTIFF significant injuries, damages, and losses in amounts to be determined at trial.

90.     To the extent that DEFENDANTS did not directly copy the PHOTOGRAPH themselves, they are liable for secondary infringement by causing or benefiting from the infringing conduct of others.

91.     DEFENDANTS distributed copies of the PHOTOGRAPH to third-parties for purposes of creating derivative products/works that were then exhibited, sold, and distributed.

92.     DEFENDANTS obtained direct financial benefits from their infringements of PLAINTIFF'S PHOTOGRAPH.

93.     By failing to secure the rights and license necessary to copy, publish, distribute, and otherwise use and/or exploit PLAINTIFF'S PHOTOGRAPH, DEFENDANTS acted willfully, intentionally, and/or with reckless disregard for PLAINTIFF'S copyrights.

94.     By illegitimately offering, distributing, and/or sublicensing the PHOTOGRAPH, DEFENDANTS usurped and violated PLAINTIFF'S exclusive rights to copy, distribute, and prepare derivative works based upon the PHOTOGRAPH.

95.     PLAINTIFF seeks all damages recoverable under the Copyright Act, including actual damages and DEFENDANTS' profits attributable to the unauthorized uses of PLAINTIFF'S creative work described herein, and any damages suffered as a result of the lack of credit and attribution.

### COUNT II
### DISTRIBUTION OF FALSE COPYRIGHT MANAGEMENT INFORMATION
### UNDER 17 U.S.C. § 1202

96.     PLAINTIFF repeats and re-alleges each allegation set forth above as if set forth fully herein.

97.    The conduct by DEFENDANTS alleged herein also constitutes a violation of Section 1202 of the Copyright Act, which protects the integrity of copyright management information ("CMI") in works of authorship.

98.    Upon information and belief, DEFENDANTS and/or their agent intentionally published and distributed the PHOTOGRAPH with false CMI that intended to and did falsely represent that DEFENDANTS were the authors and/or copyright owners of the PHOTOGRAPH rather than PLAINTIFF.

99.    DEFENDANTS added the SANDERS LOGO to the bottom of the PHOTOGRAPH when distributing it to third parties, such as The Highland Mint, to falsely represent and suggest that DEFENDANTS owned the copyrights in and to the PHOTOGRAPH and to conceal and hide their ongoing infringements of PLAINTIFF'S copyrights in and to the PHOTOGRAPH.

100.    PLAINTIFF seeks all available damages under Section 1202 and 1203 of the Copyright Act related to DEFENDANTS' distribution of false CMI in connection with their infringing uses of PHOTOGRAPH.

### COUNT III
### UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN
### UNDER SECTION 43 OF THE LANHAM ACT

101.    PLAINTIFF repeats and re-alleges each allegation set forth above as if set forth fully herein.

102.    To the extent that the conduct of DEFENDANTS alleged herein does not violate PLAINTIFF'S rights under the Copyright Act, such conduct rises to the level of unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.    DEFENDANTS intentionally misrepresented the ownership and source of the PHOTOGRAPH to retailers including The Highland Mint for purposes of creating infringing memorabilia products.

104.    DEFENDANTS intentionally placed the SANDERS LOGO on a copy of the PHOTOGRAPH to indicate that DEFENDANTS were the exclusive owner/licensor of the PHOTOGRAPH.

105.    DEFENDANTS' derivative use of the PHOTOGRAPH as the brand logo for all manner of memorabilia and products unfairly misappropriated PLAINTIFF'S creative work and falsely designated that DEFENDANTS were the exclusive owners of such work.

106.    PLAINTIFF seeks all allowable damages under the Lanham Act related to DEFENDANTS' unfairly and falsely designating the source of the PHOTOGRAPH.

**COUNT IV**
**UNFAIR COMPETITION**
**UNDER NEW YORK COMMON LAW**

107.    PLAINTIFF repeats and re-alleges each allegation set forth in the paragraphs above as if set forth fully herein.

108.    PLAINTIFF alleges that the conduct of DEFENDANTS as stated herein also constitutes unfair competition under New York common law.

109.    DEFENDANTS unfairly and knowingly held themselves out as the owner and authorized licensor of PLAINTIFF'S PHOTOGRAPH to business partners and retailers.

110.    Through their conduct, DEFENDANTS misappropriated the fruits of PLAINTIFF'S labor, skill, and expenditures in creating the PHOTOGRAPH and did so knowing that PLAINTIFF was the exclusive owner of the PHOTOGRAPH and all rights thereto.

111.    By using PLAINTIFF'S PHOTOGRAPH in the SANDERS LOGO, PHOTO MINT PRODUCT and other memorabilia products, DEFENDANTS unfairly misappropriated PLAINTIFF'S rights and business opportunities.

112.    PLAINTIFF seeks all available remedies and damages owing to DEFENDANTS' violation of New York common law, including compensatory and punitive damages.

**WHEREFORE,** PLAINTIFF respectfully prays for judgment on his behalf and for the following relief:

1.    A trial by jury of all claims and issues so triable;

2.    A permanent injunction against DEFENDANTS prohibiting them from copying, displaying, distributing, advertising, promoting, and/or exploiting in any manner the copyrighted work identified herein, and requiring DEFENDANTS to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of PLAINTIFF'S PHOTOGRAPH and all copies of the infringing materials described in this complaint that are in the control or possession or custody of DEFENDANTS;

3.    All allowable damages under the Copyright Act, including but not limited to actual damages, including damages incurred as a result of PLAINTIFF'S loss of licensing revenue, DEFENDANTS' profits attributable to the infringement, and lack of attribution to PLAINTIFF;

4.    All allowable damages under the Lanham Act related to DEFENDANTS' false designation of origin of the PHOTOGRAPH;

5.    All allowable damages under New York unfair competition law, including compensatory and punitive damages; and

6.    For such other and further relief as the Court deems just and proper.

Dated:   October 30, 2024

Respectfully submitted,

/s/ *Kevin McCulloch*
Kevin P. McCulloch
McCulloch Kleinman Law
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358